JACKSON LEWIS P.C.
   90 State House Square, 8th Floor
   Hartford, Connecticut 06103
   (860) 522-0404
Attorneys of Record:
   Victoria Woodin Chavey
   Kevin P. Connolly

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAUREN BONNER,<br><br>                Plaintiff,<br><br>     v.<br><br>POINT72 ASSET MANAGEMENT, L.P., STEVEN A. COHEN, in his individual and professional capacities, and DOUGLAS D. HAYNES, in his individual and professional capacities,<br><br>                Defendants. | Civ. No.: 1:18-cv-01233 (AT) (HBP)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

                                             Respectfully Submitted,

                                             JACKSON LEWIS P.C.
                                             90 State House Square, 8th Floor
                                             Hartford, Connecticut 06103
                                             (860) 522-0404 Telephone
                                             (860) 247-1330 Facsimile


                                             */s/ Victoria Woodin Chavey*
                                   By:   Victoria Woodin Chavey
                                         *Attorneys for Defendants*


Dated:  February 14, 2018
           Hartford, Connecticut

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 2

    A.    Plaintiff Agreed to Arbitrate Claims Arising out of Her Employment with Point72. ..... 2

    B.    Plaintiff Breached Her Agreement to Arbitrate by Filing This Civil Lawsuit. ................ 2

ARGUMENT ............................................................................................................................... 3

I.    The Court Should Compel Plaintiff to Resolve Her Claims in The Forum to Which She Agreed – Arbitration. ........................................................................................................ 3

    A.    Federal Law Requires the Court to Enforce a Valid Arbitration Agreement................... 3

    B.    The Parties' Agreement Requires Plaintiff to Arbitrate Her Claims in this Case. ............ 4

        1.    The Parties Agreed to Arbitrate. ..................................................................................... 5

        2.    Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement. ...................... 5

        3.    Plaintiff's Federal Statutory Claim Is Not Subject To Legislative Exemption From Arbitration...................................................................................................................... 11

II.    The Court Should Dismiss the Complaint. ............................................................................ 12

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

Arshad v. Transp. Sys.,
 183 F. Supp. 3d 442 (S.D.N.Y. 2016) ................................................................................. 9, 10

Bacon Construction Co. v. Dep't of Public Works,
 294 Conn. 695 (2010) .................................................................................................................. 9

Bensadoun v. Jobe-Riat,
 316 F.3d 171 (2d Cir. 2003) ........................................................................................................ 4

CapitalSource Fin., LLV v. Hartford Downtown Revival, LLC,
 HHDCV126037665S, 2017 Conn. Super. LEXIS 987 (Conn. Super. Ct. May 16, 2017) ......... 8

Circuit City Stores, Inc. v. Adams,
 532 U.S. 105 (2001) .................................................................................................................... 3

College Plaza, Inc. v. Harlaco Inc.,
 206 A.2d 832 (Conn. 1965) ...................................................................................................... 10

D'Antuono v. Serv. Rd. Corp.,
 789 F. Supp. 2d 308 (D. Conn. 2011) ........................................................................................ 5

Dean Witter Reynolds, Inc. v. Byrd,
 470 U.S. 213, (1985) ............................................................................................................... 3, 4

Drakeford v. Wash. Mut.,
 No. 07 Civ. 3489, 2008 U.S. Dist. LEXIS 53224 (S.D.N.Y. July 11, 2008) ........................... 12

Edese Doret Indus. Design, Inc. v. AVN Solutions, Inc.,
 14 Civ. 2295(AT), 2015 U.S. Dist. LEXIS 12362 (S.D.N.Y. 2015) .......................................... 3

Elmira Teachers' Assn. v. Elmira City Sch. Dist.,
 53 A.D.3d 757 (3rd Dept. 2008). ................................................................................................ 8

First Options of Chicago, Inc. v. Kaplan, et. al.,
 514 U.S. 938 (1995) .................................................................................................................... 9

Genesco, Inc. v. T. Kakiuchi & Co.,
 815 F.2d 840 (2d Cir. 1987) ............................................................................................... 4, 5, 6

Gold v. Deutsche Aktiengesellschaft,
 365 F.3d 144 (2d Cir. 2004) ........................................................................................................ 5

Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp.,
 246 F.3d 219 (2d Cir. 2001) ........................................................................................................ 6

Issler v. Issler,
    250 Conn. 226 (1999) ........................................................................................................ 8

Johnson v. Tishman Speyer Props., L.P.,
    No. 09 Civ. 1959, 2009 U.S. Dist. LEXIS 96464 (S.D.N.Y. Oct. 16, 2009) ........................... 12

Kozera v. Westchester-Fairfield Chapter of Nat'l Elec. Contractors Ass'n, Inc.,
    909 F.2d 48 (2d Cir. 1990) ................................................................................................ 9

Lewis Tree Serv., v. Lucent Techs., Inc.,
    239 F. Supp. 2d 332 (S.D.N.Y. 2002) ............................................................................... 13

Lipson v. Birch,
    46 F. Supp. 3d 206 (E.D.N.Y. 2014) ................................................................................... 3

Martinez v. Bloomberg LP,
    883 F. Supp. 2d 511 (S.D.N.Y. 2012) ................................................................................. 3

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614 (1985) ........................................................................................................... 6

Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1 (1983) ........................................................................................................... 3, 6

Nunez v. Citibank, N.A.,
    No. 08-Civ-5398 (BSJ), 2009 U.S. Dist. LEXIS 7783 (S.D.N.Y. Feb. 3, 2009) ..................... 12

O'Brien v. U.S. Fidelity and Guarantee Co.,
    235 Conn. 837 (1996) ........................................................................................................ 8

Oldroyd v. Elmira Sav. Bank, FSB,
    134 F.3d 72 (2d Cir. 1998) ...................................................................................... 6, 7, 11

Reynolds v. de Silva,
    No. 09 Civ. 9218 (CM), 2010 U.S. Dist. LEXIS 18040 (S.D.N.Y. Feb. 24, 2010) ................ 12

Roby v. Corp. of Lloyd's,
    996 F.2d 1353 (2d Cir. 1993) ............................................................................................. 3

Rubin v. Sona Int'l Corp.,
    457 F. Supp. 2d 191 (S.D.N.Y. 2006) ............................................................................... 12

Ryan v. JPMorgan Chase & Co.,
    924 F. Supp. 2d 559 (S.D.N.Y. 2013) ........................................................................... 5, 12

Savarese v. J.P. Morgan Chase,
    16-CV-321 (JFB) (SIL), 2016 U.S. Dist. LEXIS 159765 (E.D.N.Y. Nov. 16, 2016) ............... 6

Spencer-Franklin v. Citigroup/Citibank N.A.,
  No. 06 Civ. 3475 (GBD), 2007 U.S. Dist. LEXIS 25870 (S.D.N.Y. Apr. 4, 2007) ................. 12

Thomas v. Public Storage,
  957 F. Supp. 2d 496 (S.D.N.Y. July 31, 2013) ................................................................ 6, 7, 12

**Statutes**

9 U.S.C. § 2 ............................................................................................................................. 3

9 U.S.C. § 3 ........................................................................................................................... 13

9 U.S.C. § 4 ..................................................................................................................... 4, 12

Fed. R. Civ. P. 56(c) ............................................................................................................... 4

# PRELIMINARY STATEMENT

Defendants, Point72 Asset Management, L.P. ("Point72" or the "Company"), Steven A. Cohen ("Cohen"), in his individual and professional capacities, and Douglas D. Haynes ("Haynes"), in his individual and professional capacities, (hereinafter collectively referred to as "Defendants"), submit this memorandum of law in support of their Motion to Compel Arbitration and to Dismiss the Complaint, pursuant to the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA"), and the Local Rules of this Court.

Plaintiff Lauren Bonner agreed to arbitrate employment-related disputes with Point72 as a condition of employment with the Company. In violation of this promise, Plaintiff commenced this action asserting a violation of the Equal Pay Act, 29 U.S.C. §§ 206 et. seq. ("EPA") and the New York Labor Law § 194 against all Defendants (Counts I and II), gender discrimination under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") against all Defendants (Counts III and VI), retaliation under the NYSHRL and NYCHRL against all Defendants (Counts IV and VII), and aiding and abetting discrimination and retaliation under the NYSHRL and the NYCHRL against Defendants Cohen and Haynes (Counts V and VIII). Consistent with prevailing case law and the well-established federal policy favoring arbitration, Defendants now respectfully move this Court for an Order: (1) compelling Plaintiff to arbitrate her claims against Defendants; and (2) dismissing this action or, in the alternative, staying this action pending resolution of Plaintiff's claims through arbitration.

**FACTUAL BACKGROUND**

**A. <u>Plaintiff Agreed to Arbitrate Claims Arising out of Her Employment with Point72.</u>**

Upon being hired by Point72, on June 23, 2016, Plaintiff signed an "Agreement Regarding Conditions of Employment" ("Agreement"). (Declaration of Victoria Woodin Chavey dated February 14, 2018 ("Chavey Decl.").) The Agreement contains an arbitration provision, which appears in large bold-face type under the section heading "Arbitration." (Chavey Decl., Ex. A, p. 5, § 10.) Under that provision, "any dispute or controversy arising out of or relating to th[e] Agreement, [Plaintiff's] offer letter and/or the employment relationship" is to "be settled by arbitration" held in Stamford, Connecticut and pursuant to the American Arbitration Association's ("AAA") Employment Arbitration Rules. (Chavey Decl., Ex. A, p. 5, § 10.)[1]

**B. <u>Plaintiff Breached Her Agreement to Arbitrate by Filing This Civil Lawsuit.</u>**

On February 12, 2018, Plaintiff filed the action before this Court, asserting a violation of the Equal Pay Act, 29 U.S.C. §§ 206 <u>et. seq.</u> ("EPA") and the New York Labor Law § 194 against all Defendants (Counts I and II), gender discrimination under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") against all Defendants (Counts III and VI), retaliation under the NYSHRL and NYCHRL against all Defendants (Counts IV and VII), and aiding and abetting discrimination and retaliation under the NYSHRL and the NYCHRL against Defendants Cohen and Haynes (Counts V and VIII).

---

[1] The full text of the arbitration provision reads as follows: **"THE PARTIES AGREE THAT ANY DISPUTE OR CONTROVERSY ARISING OUT OF OR RELATING TO THIS AGREEMENT, YOUR OFFER LETTER, AND/OR THE EMPLOYMENT RELATIONSHIP, WILL BE SETTLED BY ARBITRATION TO BE HELD IN STAMFORD, CONNECTICUT, IN ACCORDANCE WITH THE EMPLOYMENT ARBITRATION RULES THEN IN EFFECT, OF THE AMERICAN ARBITRATION ASSOCIATION; PROVIDED, HOWEVER, THAT THE ARBITRATOR WILL BE KNOWLEDGEABLE IN INDUSTRY STANDARDS AND PRACTICES, THAT THE POWER OF THE ARBITRATOR WILL BE LIMITED TO INTERPRETING THIS AGREEMENT AND/OR THE OFFER LETTER AS WRITTEN AND THAT THE ARBITRATOR WILL STATE IN WRITING THE REASONS FOR HIS OR HER AWARD AND THE LEGAL AND FACTUAL CONCLUSIONS UNDERLYING THE AWARD. THE AWARD OF THE ARBITRATOR WILL BE FINAL, AND JUDGMENT UPON THE AWARD MAY BE CONFIRMED AND ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION."**

These claims relate to Plaintiff's "employment relationship" with Point72. Accordingly, by filing her claims in Court, Plaintiff is in violation of the arbitration provision of the Agreement. (Chavey Decl., Ex. A, p. 5, § 10.)

**ARGUMENT**

I. **THE COURT SHOULD COMPEL PLAINTIFF TO RESOLVE HER CLAIMS IN THE FORUM TO WHICH SHE AGREED – ARBITRATION.**

   A. **Federal Law Requires the Court to Enforce a Valid Arbitration Agreement.**

There is a strong public policy in favor of arbitration clauses. Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993); Martinez v. Bloomberg LP, 883 F. Supp. 2d 511, 515 (S.D.N.Y. 2012); Lipson v. Birch, 46 F. Supp. 3d 206, 213 (E.D.N.Y. 2014). Congress enacted the Federal Arbitration Act to turn this "strong federal policy" into law, Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217, 219-21 (1985), and made it applicable to all contracts governing working relationships except those involving transportation workers. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001). The FAA expressly requires courts to enforce written private agreements to arbitrate disputes, declaring:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon any such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. As the Supreme Court has recognized, the FAA embodies "a congressional declaration of a liberal federal policy favoring arbitration agreements," and "**any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration**." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) (emphasis added); see also Edese Doret Indus. Design, Inc. v. AVN Solutions, Inc., 14 Civ. 2295(AT), 2015 U.S. Dist. LEXIS 12362, at *3 (S.D.N.Y. 2015) (Torres, J.) ("The FAA leaves no place for the exercise of

3

discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (internal citations and quotations omitted.)

Further, upon finding that a dispute is subject to a binding arbitration agreement, the FAA *mandates* courts to compel arbitration of the dispute. 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."). In construing this obligation, the Second Circuit has emphasized that, "'by its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)).

Courts apply a summary judgment standard when evaluating whether to compel arbitration pursuant to the FAA. See Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) (citations omitted.) Thus, courts must grant a motion to compel arbitration "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). This standard is readily met here, thereby requiring the Court to compel arbitration.

**B. The Parties' Agreement Requires Plaintiff to Arbitrate Her Claims in this Case.**

In determining whether to compel arbitration pursuant to the FAA, courts in the Second Circuit assess: (1) whether the parties agreed to arbitrate; (2) whether the claims at issue fall within the scope of the arbitration agreement; and (3) if federal statutory claims are asserted, whether Congress intended to preclude arbitration of those claims. See Genesco, Inc., 815 F.2d at

4

844; Ryan v. JPMorgan Chase & Co., 924 F. Supp. 2d 559, 562-63 (S.D.N.Y. 2013). Here, resolution of each of these issues favors compelling arbitration of Plaintiff's claims.

### 1. The Parties Agreed to Arbitrate.

A party creates presumptive evidence of its assent to enter into a binding agreement by signing a written arbitration agreement. Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004); D'Antuono v. Serv. Rd. Corp., 789 F. Supp. 2d 308, 323 (D. Conn. 2011) ("[T]he fact that a party signed a written agreement is usually conclusive evidence of contract formation."). "[I]n the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them." Gold, 365 F.3d at 149 (internal citations and quotations omitted); accord D'Antuono, 789 F. Supp. 2d at 323.

Plaintiff signed the Agreement, and there is no evidence of fraud or other wrongful act on the part of Defendants. Accordingly, there is a presumption that Plaintiff assented to arbitrate "any dispute or controversy arising out of th[e] Agreement, [her] offer letter, or [her] employment relationship" with Point72. See D'Antuano, Gold, supra; (Chavey Decl., Ex. A, p. 5, § 10.)

### 2. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement.

For the reasons discussed below, there can be no question that Plaintiff's claims fall within the scope of the Arbitration Agreement.

*i. The "Employment Relationship" Encompasses Discrimination Claims.*

"In determining whether a particular claim falls within the scope of the parties' arbitration agreement, [courts] focus on the factual allegations in the complaint rather than the legal causes of action asserted." Genesco Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987). "Further, Courts in this Circuit have held that 'doubts as to whether a claim falls within the

5

scope of [an arbitration] agreement should be resolved in favor of arbitrability.'" Savarese v. J.P. Morgan Chase, 16-CV-321 (JFB) (SIL), 2016 U.S. Dist. LEXIS 159765, at *16 (E.D.N.Y. Nov. 16, 2016) (quoting Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001) and citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

"Arbitration clauses may cover statutory claims even if the 'clause at issue does not mention [the specific] statutes or statutes in general.'" Thomas v. Public Storage, 957 F. Supp. 2d 496, 500 (S.D.N.Y. July 31, 2013) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 615 (1985)). Broad arbitration provisions, such as the one at issue here, have been enforced in the Second Circuit. See id. (citing Genesco, 815 F.2d at 845) (upholding arbitration clauses that generally referred to "[a]ll claims and disputes of whatever nature arising under the contract" and "[a]ny controversy arising out of or relating to his contract"); see also Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998) ("[W]e have held that the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said *with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute.*") (internal citations and quotations omitted).

For example, in Thomas, this Court granted the defendant's motion to compel arbitration of the plaintiff's Title VII, NYSHRL, and NYCHRL sex discrimination and retaliation claims where the plaintiff signed a nearly identical arbitration provision as the one at issue in this case: "[a]ll employment at Public Storage is subject to and conditional upon agreeing to final and binding arbitration arising out of the employment relationship." See Thomas, 957 F. Supp. 2d at 500. Likewise, in Oldroyd, the Second Circuit held that the plaintiff's retaliatory discharge claim brought pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 was

6

"presumptively within the scope of the arbitration clause contained in [the plaintiff's] employment agreement," which made arbitrable "any dispute, controversy or claim arising under or in connection with [the plaintiff's] employment agreement." Oldroyd, 134 F.3d at 76-77 ("We have previously held that this is precisely the kind of broad arbitration clause that justifies a presumption of arbitrability.")

Based on the holdings in Thomas and Oldroyd, and the clear mandate from courts in the Second Circuit that the "scope of [an arbitration] agreement should be resolved in favor of arbitrability," the broad general description of covered claims under the arbitration provision in the Agreement encompass each and every cause of action asserted in Plaintiff's Complaint, namely, her claims of unequal pay (Counts I and II), gender discrimination (Counts III and VI), retaliation for opposing gender discrimination (Counts IV and VII), and the claims of aiding and abetting "unlawful *employment* practices" asserted against Cohen and Haynes (Counts V and VIII) (emphasis added.)

> ii. *An Interpretation that the Arbitration Provision Does Not Encompass Plaintiff's Claims Does Not Comport With Basic Principles of Contract Law.*

To the extent that Plaintiff argues that her claims do not fall within the scope of the arbitration provision because of the language stating that "the power of the arbitrator will be limited to interpreting this Agreement and/or the offer letter as written," (Chavey Decl., Ex. A, p. 5, § 10), any such argument would be without merit. Such an interpretation does not comport with basic principles of contract interpretation and would yield absurd results.

The Agreement provides that it should be "constructed in accordance with the laws of the State of Connecticut, U.S.A., without regard to conflicts of laws principles, applicable to contracts made and to be fully performed in such state." (Chavey Decl., Ex. A, p. 5, § 11(B).)

7

Under Connecticut law, "a contract must be construed to effectuate the intent of the parties, which is determined from the language used, interpreted in the light of the situation of the parties and the circumstances connected with the transaction." Issler v. Issler, 250 Conn. 226, 235 (1999). "[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." Id. (internal citations and quotations omitted). The contract must be read as a whole and if possible every term must be given operative effect. O'Brien v. U.S. Fidelity and Guarantee Co., 235 Conn. 837, 843 (1996).[2]

Applying these principles, it is clear that the arbitration provision gives the arbitrator the power to resolve disputes by interpreting the Agreement and/or offer letter "as written," meaning that the arbitrator cannot amend or modify either document. In other words, the language limits how the arbitrator may resolve a dispute regarding the interpretation of the Agreement and/or the offer letter and not the disputes the arbitrator may resolve. Indeed, the language does not even reference disputes related to the "employment relationship," which were clearly intended to fall within the scope of the arbitration provision.

This interpretation comports with the well-established rule that "courts construing contracts should avoid interpreting them in ways that yield absurd results." See CapitalSource Fin., LLV v. Hartford Downtown Revival, LLC, HHDCV126037665S, 2017 Conn. Super. LEXIS 987, at *3 (Conn. Super. Ct. May 16, 2017). Indeed, it is utterly unreasonable to assume that the parties intended only to arbitrate the interpretation of the Agreement and/or the offer letter given the broad opening language of the arbitration provision, which states that "[t]he parties agree that ***any dispute or controversy arising out of or relating to this agreement, your offer letter, and/or***

---

[2] Even if New York contract law was somehow found to apply here, it is virtually identical to Connecticut law. See Elmira Teachers' Assn. v. Elmira City Sch. Dist., 53 A.D.3d 757, 759 (3rd Dept. 2008).

8

*the employment relationship, will be settled by arbitration.*" (Chavey Decl., Ex. A, p. 5, § 10.) (emphasis added).

> iii. *Any Questions Regarding the Scope of the Agreement Must Be Submitted to Arbitration.*

Even if this Court were to find that there is a question as to whether Plaintiff's claims fall within the scope of the arbitration provision, it must still refer this case to arbitration as the provision explicitly delegates arbitrability determinations to the arbitrator. See Arshad v. Transp. Sys., 183 F. Supp. 3d 442, 446 (S.D.N.Y. 2016) (stating that the presumption that courts decide issues of arbitrability is rebutted when there is "clear and unmistakable evidence from the arbitration agreement, *as construed by the relevant state law*, that the parties intended that the question of arbitrability shall be decided by the arbitrator") (emphasis added) (internal citations and quotations omitted); accord First Options of Chicago, Inc. v. Kaplan, et. al., 514 U.S. 938, 943 (1995) ("[T]he arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute . . . . [A] court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration."); Bacon Construction Co. v. Dep't of Public Works, 294 Conn. 695, 714 (2010) ("Whether a particular dispute is arbitrable" is not a question for the court, where, "by appropriate language, the parties have agreed to arbitrate that question, also.") (internal citations and quotations omitted). "[T]he presumed authority of an arbitrator to resolve issues is broad, and courts expansively interpret the scope of an arbitrator's delegated authority by resolving doubts in favor of arbitrability." Kozera v. Westchester-Fairfield Chapter of Nat'l Elec. Contractors Ass'n, Inc., 909 F.2d 48, 53 (2d Cir. 1990).

Connecticut's standard for determining whether parties have agreed to arbitrate the issue of arbitrability parallels the "clear and unmistakable" standard set forth in Kaplan. See Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002). The parties can manifest an intention to

9

arbitrate arbitrability through an "express provision or through the use of broad terms to describe the scope of arbitration." See White v. Kampner, 229 Conn. 465, 472, 474 n.10 (1994) ("[T]he language of the contract answers the question of whether the trial court or the arbitrator determines issues of arbitrability, not the formal identity of the issue as procedural or substantive."). Additionally, courts within this circuit have routinely found "the delegation of arbitrability clear and unmistakable where the AAA rules are incorporated by reference into the arbitration clause." Doctor's Assocs. v. Pahwa, Civ. No. 3:16CV00446(JCH), 2016 U.S. Dist. LEXIS 177427, at *54 (D. Conn. Nov. 3, 2016) (citing Arshad, 183 F. Supp. 3d at 446). Based on these principles, the arbitration provision clearly and unmistakably grants the arbitrator the power to decide issues of arbitrability.

The arbitration provision provides that one of the "power[s] of the arbitrator" is to "interpret[] th[e] Agreement." (Chavey Decl., Ex. A, p. 5, § 10.) It further dictates that "any dispute or controversy arising out of or relating to [the] Agreement . . . will be settled by arbitration." (Id.) These are the type of "express provisions" that courts conclude "manifest an intent to arbitrate arbitrability." See College Plaza, Inc. v. Harlaco Inc., 206 A.2d 832, 833 (Conn. 1965) ("The agreement in the present case provided that [any] disagreement arising out of this contract or from the breach thereof shall be submitted to arbitration. We have consistently held that under such broad and all-embracing language the question of what is subject to arbitration is for the arbitrators themselves.") (internal quotations omitted).

Moreover, the arbitration provision incorporates the AAA Employment Arbitration Rules, which give the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (Chavey Decl., Ex. A, p. 5, § 10, Ex. B, p. 17, § 6.) Such incorporation "clearly and unmistakably" delegates

10

arbitrability to the arbitrator. See Pahwa, 2016 U.S. Dist. LEXIS 177427, at *54 (citing cases).

Accordingly, to the extent there is even a question regarding the scope of claims covered by the arbitration provision, such question must be resolved through arbitration.

### 3. **Plaintiff's Federal Statutory Claim Is Not Subject To Legislative Exemption From Arbitration.**

As to the third element, Plaintiff's federal statutory claim is arbitrable. The burden of demonstrating that Congress intended to preclude arbitration of a federal statutory claim lies with the party opposing arbitration. Oldroyd, 134 F.3d at 78. Under settled law, Plaintiff cannot satisfy that burden with respect to her claim under the EPA.

The Supreme Court's decision in Gilmer—the first instance in which the Court addressed the enforceability of an employment arbitration agreement in a non-unionized setting—made clear that employment discrimination claims are arbitrable. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (explaining that, "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum"). Indeed, "there is no evidence that Congress intended claims under the EPA to be non arbitrable." Crawley v. Macy's Retail Holdings, Inc., 15 Civ. 2228(KPF), 2017 U.S. Dist. LEXIS 80541, at *13 (S.D.N.Y. May 25, 2017) (internal citations and quotations omitted); Daly v. Citigroup, Inc., No. 16-v-9183, 2018 U.S. Dist. LEXIS 19413, at *9 (S.D.N.Y. Feb. 6, 2018) ("In the absence of any discernable congressional intent to the contrary, the Court finds that Plaintiff's EPA claim is obviously subject to arbitration.").[3]

Thus, given Plaintiff's indisputable failure to comply with a valid and binding

---

[3] Likewise, "[t]here is ample authority hold[ing] that" claims arising under the NYSHRL and the NYCHRL are arbitrable. See Manhant v. Lehman Brothers, 99 Civ. 4421 (MBM), 2000 U.S. Dist. LEXIS 16966, at *8-9 (S.D.N.Y. Nov. 20, 2000); accord Rice v. Brown Bros. Harriman & Co., 96 Cir. 6326(MBM), 1997 U.S. Dist. LEXIS 3628, at *7-8 (S.D.N.Y. Mar. 20, 1997).

arbitration agreement, "the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (emphasis added).

## II. **THE COURT SHOULD DISMISS THE COMPLAINT.**

Where, as here, all of the claims at issue are subject to a valid and binding arbitration agreement, courts should compel arbitration and also may dismiss the action. See, e.g., Ryan, 924 F. Supp. 2d at 562 (collecting cases); Reynolds v. de Silva, No. 09 Civ. 9218 (CM), 2010 U.S. Dist. LEXIS 18040, at *23 (S.D.N.Y. Feb. 24, 2010) ("[A]ll courts of which we are aware have followed the rule that, where all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings.") (internal citations and quotations omitted.) As many courts have observed, dismissal of an action where all claims are subject to arbitration far better serves judicial economy. See, e.g., id., 2010 U.S. Dist. LEXIS 18040, at *23-24 (dismissing action where all claims were subject to arbitration, explaining that "[i]t would be an inefficient use of the Court's docket to stay the action"); Johnson v. Tishman Speyer Props., L.P., No. 09 Civ. 1959, 2009 U.S. Dist. LEXIS 96464, at *10 (S.D.N.Y. Oct. 16, 2009) (dismissing action where all claims were subject to arbitration, explaining that "no useful purpose will be served by granting a stay of the claims") (internal citations and quotations omitted.) Accordingly, this Court routinely dismisses actions where all of the claims are subject to arbitration. See, e.g., Drakeford v. Wash. Mut., No. 07 Civ. 3489, 2008 U.S. Dist. LEXIS 53224, at *9-10 (S.D.N.Y. July 11, 2008) (dismissing action where all claims were subject to arbitration); Rubin v. Sona Int'l Corp., 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) (same); Ryan, 924 F. Supp. 2d at 566 (compelling arbitration and dismissing action); Thomas, 957 F. Supp. 2d at 500 (same); Nunez v. Citibank, N.A., No. 08-Civ-5398 (BSJ), 2009 U.S. Dist. LEXIS 7783, at *10 (S.D.N.Y. Feb. 3, 2009) (same); Spencer-Franklin v. Citigroup/Citibank N.A., No. 06 Civ 3475 (GBD), 2007

U.S. Dist. LEXIS 25870, at *4 (S.D.N.Y. Apr. 4, 2007) (same); Lewis Tree Serv., v. Lucent Techs., Inc., 239 F. Supp. 2d 332, 340-41 (S.D.N.Y. 2002) (same).

Should this Court decline to dismiss the action, Defendants respectfully request that the Court stay the action pending resolution of Plaintiff's claims through arbitration. See 9 U.S.C. § 3 (authorizing district courts to enter a stay of proceedings where the asserted claims are "referable to arbitration").

## CONCLUSION

For the foregoing reasons, this Court should: (1) compel Plaintiff to arbitrate her claims against Defendants; and (2) dismiss the action, or at least stay these proceedings until conclusion of the arbitration.