UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
LAUREN BONNER,  :
  :
                   Plaintiff,  :   Civil Case No. 18-cv-1233 (AT)(HBP)
  :
    v.  :
  :
POINT72 ASSET MANAGEMENT, L.P.,  :
STEVEN A. COHEN, in his individual and  :
professional capacity, and DOUGLAS D.  :
HAYNES, in his individual and professional  :
capacity,  :
  :
                   Defendants.  :
------------------------------------------------------------ X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

**WIGDOR LLP**

Jeanne M. Christensen
Michael J. Willemin
Kenneth D. Walsh

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845

*Counsel for Plaintiff*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND .....................................................................................................................2

LEGAL ARGUMENT .............................................................................................................5

I.  PLAINTIFF'S CLAIMS ASSERTED IN THIS ACTION ARE NOT SUBJECT TO THE EMPLOYMENT AGREEMENT'S ARBITRATION CLAUSE .......................................5

   A.  The Arbitration Clause, on its Face, Does Not Cover Plaintiff's Claims ................5

   B.  Defendants' Purported Interpretation of the Arbitration Clause is Without Merit ..7

II. THIS COURT CAN AND SHOULD DECIDE THE ISSUE OF ARBITRABILITY IN THE FIRST INSTANCE ................................................................................................10

CONCLUSION ......................................................................................................................12

# **TABLE OF AUTHORITIES**

**Cases**

*24 Leggett St. Ltd. P'ship v. Beacon Indus., Inc.*,
  239 Conn. 284 (1996) .................................................................................................. 10

*Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*,
  445 F.3d 121 (2d Cir. 2006) ......................................................................................... 10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643, 106 S. Ct. 1415 (1986) .......................................................................... 10

*Bayme v. GroupAgent Sec., LLC*,
  No. 10 Civ. 6213 (GBD), 2011 WL 2946718 (S.D.N.Y. July 19, 2011) ................... 10

*Bensadoun v. Jobe-Riat*,
  316 F.3d 171 (2d Cir. 2003) ........................................................................................... 5

*Chevron U.S.A., Inc. v. Consol. Edison Co. of New York*,
  872 F.2d 534 (2d Cir. 1989) ........................................................................................... 6

*Comprehensive Orthopaedics & Musculoskeletal Care, LLC v. Axtmayer*,
  293 Conn. 748 (2009) ..................................................................................................... 9

*Downs v. Nat'l Cas. Co.*,
  146 Conn. 490 (1959) ................................................................................................. 8, 9

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938, 115 S. Ct. 1920 (1995) .......................................................................... 10

*Garcia v. Golden Abacus, Inc.*, No. 16 Civ.,
  6252 (LTS), 2017 WL 2560007 (S.D.N.Y. June 13, 2017) .......................................... 6

*Greene v. Subcontracting Concepts, L.L.C.*,
  No. 13 Civ. 1500 (AJN), 2014 WL 1087999 (S.D.N.Y. Mar. 19, 2014) ................... 11

*Harvey v. Daddona*,
  29 Conn. App. 369 (Conn. App. Ct. 1992) .................................................................... 8

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
  672 F.3d 113 (2d Cir. 2011) ........................................................................................... 5

*Lismore v. Societe Generale Energy Corp.*,
  No. 11 Civ. 6705 (AJN), 2012 WL 3577833 (S.D.N.Y. Aug. 17, 2012) ................. 5, 6

*Moss v. BMO Harris Bank, N.A.*,
 24 F. Supp. 3d 281 (S.D.N.Y. 2014) ............................................................................... 6

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
 770 F.3d 1010 (2d Cir. 2014) ......................................................................................... 11

*Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*,
 No. 13 Civ. 6721 (DLC), 2014 WL 297518 (S.D.N.Y. Jan. 28, 2014) ....................... 5

*Oldroyd v. Elmira Sav. Bank, FSB*,
 134 F.3d 72 (2d Cir. 1998) ............................................................................................. 8

*Opals on Ice Lingerie v. Bodylines Inc.*,
 320 F.3d 362 (2d Cir. 2003) ........................................................................................... 5

*Rent-A-Center West, Inc. v. Jackson*,
 561 U.S. 63, 130 S. Ct. 2772 (2010) ............................................................................. 5

*Shaw Grp., Inc. v. Triplefine Int'l Corp.*,
 322 F.3d 115 (2d Cir. 2003) ........................................................................................... 10

*State v. Phillip Morris, Inc.*,
 297 Conn. 785 (2006) ..................................................................................................... 5

*Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys., L.P.*,
 252 Conn 479 (2000) .................................................................................................. 9, 10

*Thomas v. Pub. Storage, Inc.*,
 957 F. Supp. 2d 496 (S.D.N.Y. 2013) ........................................................................... 8

*United Parcel Serv. v. Lexington Ins. Grp.*,
 No. 12 Civ. 7961 (SAS), 2013 WL 1897777 (S.D.N.Y. May 7, 2013) ..................... 11

Plaintiff Lauren Bonner respectfully submits this memorandum of law in opposition to Defendants Point72 Asset Management, L.P., Steven A. Cohen and Douglas D. Haynes's (collectively, "Point72," the "Company" or "Defendants") motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), seeking an Order: (i) compelling arbitration of Plaintiff's claims asserted in this action; and (ii) dismissing Plaintiff's Complaint, or, in the alternative, staying all proceedings pending resolution of Plaintiff's claims in arbitration. For the reasons set forth herein, Defendants' motion should be denied in its entirety.

## **PRELIMINARY STATEMENT**

In bringing and maintaining this action, Plaintiff Lauren Bonner seeks to shed light on pervasive structural sexism at Point72 and hold accountable Defendants Point72, Cohen, Haynes and other executives at the Company for their shameful and unlawful conduct. In making the instant motion to compel arbitration, Defendants have demonstrated yet again that they will go to any and all lengths to keep their unlawful and discriminatory conduct shrouded in secrecy and concealed from public scrutiny. Indeed, they seek to have this lawsuit shuttled away to arbitration despite the fact that the only arbitration provision agreed to by the parties plainly does not apply to Plaintiff's claims.

As described at length herein, the arbitration clause contained in Ms. Bonner's employment agreement with Point72 ***only*** applies to claims involving the *interpretation* of her employment agreement. But, Plaintiff's claims do not relate to an interpretation of her employment agreement. Rather, Plaintiff's claims arise under the Equal Pay Act, 29 U.S.C. §§ 206 *et seq.* ("EPA"), the New York Labor Law, N.Y. Lab. Law § 194 ("NYLL"), the New York

1

State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Admin. Code §§ 8-101 *et seq*. ("NYCHRL").

The arbitration clause simply does not cover the claims brought herein. Therefore, and for the reasons set forth herein, the Court should deny Defendants' motion to compel arbitration in its entirety.

## BACKGROUND

Since August 2016, Plaintiff has worked as an Associate Director at Point72.[1] *See* Am. Compl., Dkt. No. 26 at ¶ 24. Upon joining Point72, Ms. Bonner signed an "Agreement Regarding Conditions of Employment" (the "Employment Agreement"). *See* Declaration of Jeanne M. Christensen ("Christensen Decl."), Ex. A. Relevant for purposes of the instant motion, the Employment Agreement contains a clause addressing arbitrability of claims asserted against Point72 (the "Arbitration Clause"). Specifically, the Arbitration Clause states:

> **THE PARTIES AGREE THAT ANY DISPUTE OR CONTROVERSY ARISING OUT OF OR RELATING TO THIS AGREEMENT, YOUR OFFER LETTER, AND/OR THE EMPLOYMENT RELATIONSHIP, WILL BE SETTLED BY ARBITRATION, TO BE HELD IN STAMFORD, CONNECTICUT, IN ACCORDANCE WITH THE EMPLOYMENT ARBITRATION RULES, THEN IN EFFECT, OF THE AMERICAN ARBITRATION ASSOCIATION; <u>PROVIDED HOWEVER</u>, THAT THE ARBITRATOR WILL BE KNOWLEDGABLE IN INDUSTRY STANDARDS AND PRACTICES, <u>THAT THE POWER OF THE ARBITRATOR WILL BE LIMITED TO INTERPRETING THIS AGREEMENT AND/OR THE OFFER LETTER AS WRITTEN</u> AND THAT THE ARBITRATOR WILL STATE IN WRITING THE REASONS FOR HIS OR HER AWARD AND THE LEGAL AND FACTUAL CONCLUSIONS UNDERLYING THE AWARD. THE AWARD OF THE ARBITRATOR WILL BE FINAL, AND JUDGMENT UPON THE AWARD MAY BE CONFIRMED AND ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.**

*See* Christensen Decl., Ex. A at §10 (bold in original, underline added).

---

[1] The facts underlying Plaintiff's claims are not currently at issue and are not addressed at length herein.

On February 12, 2018, as a result of Defendants' pervasive discriminatory conduct as described in the Complaint, Plaintiff commenced this lawsuit alleging causes of action for violations of the EPA, NYLL, NYSHRL and NYCHRL. *See* Dkt. No. 1. Specifically, in her Complaint, Plaintiff alleges, *inter alia*, that "[d]iscrimination permeates the P72 environment so deeply that high level employees and executives are comfortable openly and explicitly expressing their disdain for women." *Id.* at ¶ 13. According to Plaintiff, Point72's structural sexism "causes women to be routinely denied promotions and regularly forced out after male executives accuse them of being 'too emotional,' 'too sensitive' or simply, 'women.'" *Id.* at ¶ 12. Plaintiff further alleges that, as a result of the Company's pervasive pattern of structural sexism, "the few women that are hired by P72 earn substantially less than their male counterparts, at times earning **_less than 50 cents for each dollar_** earned by men, and sometimes as little as one-third of what men earn." *Id.* at ¶ 14 (emphasis in original).

Desperate to keep Plaintiff's allegations regarding Point72's unlawful and discriminatory conduct hidden from public scrutiny, on February 13, 2018, nearly immediately after Plaintiff filed her Complaint, Defendants filed a letter motion seeking the extraordinary relief of sealing Plaintiff's Complaint in its entirety pending resolution of Defendants' anticipated motion to compel arbitration. *See* Dkt. No. 9. Defendants sought to secure secrecy and conceal their alleged unlawful and discriminatory conduct from public scrutiny on the grounds that the Complaint purportedly contains "highly confidential and sensitive allegations about third-parties, including purported compensation information." *Id.*

On February 20, 2018, the Court denied Defendants' motion to seal the Complaint in its entirety, holding that Defendants failed "to point to any information in the complaint that falls into th[e] category [of non-public confidential and/or proprietary information] except for

information about the compensation of [Defendants'] other employees." Dkt. No. 21. The Court further observed that, "[e]ven if the Court were to find that the parties agreed to keep this information confidential or that Defendants' privacy interest in this information outweighs the presumption of public access, the Court finds that sealing the entire complaint is not narrowly tailored to serve those interests." *Id.* As the Court observed, "Defendants could have, but did not, apply to redact the relevant portions of the complaint in accordance with Rule IV.A of the Court's Individual Practices in Civil Cases."[2] *Id.*

On February 14, 2018, in a continuation of Defendants' attempt to keep their unlawful and discriminatory conduct hidden and out of view of the public eye, Defendants filed the instant motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and the FAA, seeking an Order: (i) compelling arbitration of Plaintiff's claims asserted in this action; and (ii) dismissing Plaintiff's Complaint, or, in the alternative, staying all proceedings pending resolution of Plaintiff's claims in arbitration. *See* Dkt. No. 19. According to Defendants, Ms. Bonner's claims are subject to arbitration because she "agreed to arbitrate employment-related disputes with Point72 as a condition of employment with the Company." *Id.* at 1. However, for the reasons set forth herein, the Arbitration Clause in Plaintiff's Employment Agreement does not apply to Plaintiff's claims asserted in this action, and Defendants' arguments lack merit. Accordingly, the Court should deny Defendants' motion to compel arbitration in its entirety and should adjudicate the merits of Plaintiff's claims.

---

[2] Consistent with the Court's observation, Plaintiff consented to Defendants' request that limited information be redacted from the Complaint, and an Amended Complaint was filed on February 27, 2018. *See* Dkt. No. 26.

# LEGAL ARGUMENT

## I. PLAINTIFF'S CLAIMS ASSERTED IN THIS ACTION ARE NOT SUBJECT TO THE EMPLOYMENT AGREEMENT'S ARBITRATION CLAUSE

### A. The Arbitration Clause, on its Face, Does Not Cover Plaintiff's Claims

Although the FAA reflects a liberal policy favoring arbitration, "it is a 'fundamental principal that arbitration is a matter of contract.'" *Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*, No. 13 Civ. 6721 (DLC), 2014 WL 297518, at *2 (S.D.N.Y. Jan. 28, 2014) (quoting *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 67, 130 S. Ct. 2772 (2010)). Therefore, "***a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.***" *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 127-28 (2d Cir. 2011) (emphasis added); *see also Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003) (observing that arbitration agreements are "as enforceable as other contracts, but not more so").

In determining whether a plaintiff's claims are subject to an arbitration agreement, "a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Servs., Inc. Litig.*, 672 F.3d at 128. Furthermore, in determining a motion to compel arbitration, "[t]he issue of whether the parties to a contract have agreed to arbitration is controlled by their intention." *State v. Phillip Morris, Inc.*, 297 Conn. 785, 796 (2006).

In deciding a motion to compel arbitration, the court ordinarily "applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *see also Lismore v. Societe Generale Energy Corp.*, No. 11 Civ. 6705 (AJN), 2012 WL 3577833, at *1 (S.D.N.Y. Aug. 17, 2012) (holding that, in deciding a motion to compel arbitration, "the Court would apply a standard similar to that of a summary

5

judgment motion . . . and some discovery may be available or necessary"). However, where the defendant moves to compel arbitration "before discovery has taken place, in the context of a motion to dismiss, [the court] treats the allegations in plaintiffs' complaint as true." *Moss v. BMO Harris Bank, N.A.*, 24 F. Supp. 3d 281, 284 (S.D.N.Y. 2014).

Applying these standards, the Court should deny Defendants' motion to compel arbitration in its entirety. Plaintiff does not dispute that she executed the Employment Agreement with Point72, and that in doing so, she agreed to arbitrate certain claims. However, the claims that Plaintiff asserts in this action clearly fall ***outside*** the scope of the Arbitration Clause, as the clause specifically states that the power of any arbitrator is "limited to interpreting th[e] [Employment] [A]greement and/or the offer letter as written . . . ." Christensen Decl., Ex. A at § 10. Plaintiff does not assert any claims against Defendants involving the interpretation of her Employment Agreement or offer letter. Rather, she asserts causes of action arising under the EPA, NYLL, NYSHRL and NYCHRL arising from pervasive structural sexism at Point72. *See* Compl. at ¶¶ 128-70. Given that the parties only agreed to grant an arbitrator the authority to "interpret[ ] th[e] [Employment] [A]greement and/or the offer letter as written," the employment discrimination claims brought herein cannot be arbitrated, and Defendants' motion should be denied. *See Garcia v. Golden Abacus, Inc.*, No. 16 Civ. 6252 (LTS), 2017 WL 2560007, at *3 (S.D.N.Y. June 13, 2017) (denying the defendant's motion to compel arbitration where the "action [was] outside the scope of the Agreement's arbitration clause"); *see also Chevron U.S.A., Inc. v. Consol. Edison Co. of New York*, 872 F.2d 534, 537 (2d Cir. 1989) (observing that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit").

**B.    Defendants' Purported Interpretation of the Arbitration Clause Is Without Merit**

Despite the fact that the Arbitration Clause explicitly limits an arbitrator's ability to decide disputes between the parties concerning the interpretation of Plaintiff's Employment Agreement or offer letter, Defendants argue that Plaintiff's claims should be compelled to arbitration. In making this argument, Defendants naturally isolate and focus on only one phrase within the Arbitration Clause. Specifically, Defendants point to the opening phrase of the Arbitration Clause, which states that "any dispute or controversy arising out of or relating to this agreement, or [Plaintiff's] offer letter, and/or the employment relationship, will be settled by arbitration . . . ." Christensen Decl., Ex. A at § 10. Indeed, Defendants repeatedly quote solely this opening phrase of the Arbitration Clause, failing to fully cite the remaining crucial language. *See* Defs.' Mem. at 2-6.

While the opening phrase of the Arbitration Clause is undoubtedly broad, it cannot be read in isolation. Indeed, and critically, the portion of the provision starting with the words, "the parties agree…" through the words, "…underlying the award," is a single sentence. *Id.* The use of the words, "provided," "however" and "limited," all of which are contained in the same sentence as the broad opening phrase, are – of course – intended to qualify and limit the types of disputes that can be arbitrated and set the conditions for such arbitrations:

- The word "provided" means "on the condition or understanding." *See* http://www.dictionary.com/browse/provided. Here, the broad opening phrase of the Arbitration Agreement is subsequently being conditioned on the relevant dispute being related to an interpretation of the Employment Agreement and/or offer letter.

- The word "however" means "nevertheless; yet; on the other hand; in spite of that." *See* http://www.dictionary.com/browse/however. Here, "in spite of" the broad opening phrase of the Arbitration Agreement, arbitrable disputes are, in fact, limited to those that are

> related to an interpretation of the Employment Agreement and/or offer letter.

- The word "limited" means "confined within limits, restricted or circumscribed." *See* http://www.dictionary.com/browse/limited. Again, notwithstanding the broad opening phrase of the Arbitration Agreement, the arbitrator's authority is limited to disputes involving the interpretation of the Employment Agreement and/or offer letter.

To determine the force and effect of the opening phrase of the Arbitration Clause without consideration of the qualifications and conditions outlined in the very same sentence, as Defendants wish, would be to violate basic principles of contract interpretation.[3] *See Harvey v. Daddona*, 29 Conn. App. 369, 375 (Conn. App. Ct. 1992) ("To give meaning to contracts, courts interpret the intent of the parties by construing ***the whole contract and all relevant provisions*** together.") (emphasis added); *see also Downs v. Nat'l Cas. Co.*, 146 Conn. 490, 495 (1959) ("[A] court must attempt to give meaning to every word of a contract.").

In an effort to manufacture meaning to the limiting clauses that is somehow consistent with their desire to compel arbitration, Defendants argue that the limiting clauses means only that "the arbitrator cannot amend or modify" the Employment Agreement and/or offer letter and does not otherwise limit the power of the arbitrator. Defs.' Mem. at 8. However, that is simply not what the Arbitration Clause says. The Arbitration Clause states very clearly, notwithstanding the broad opening phrase, "that the power of the arbitrator will be limited to interpreting the agreement and/or the offer letter as written." Christensen Dec., Ex. A at § 10. This provision explicitly proscribes "the power of the arbitrator" with respect to the types of determinations an arbitrator can make. While Defendants argue that the provision "does not even reference

---

[3] The cases cited by Defendants – which they disingenuously state involve arbitration agreements "nearly identical" to the one at issue herein – are completely inapposite because they do not contain any limiting language. *See Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496, 498 (S.D.N.Y. 2013); *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 77 (2d Cir. 1998).

8

disputes related to the 'employment relationship,'" this argument is disingenuous – the limiting provision is in the same exact sentence as the reference to disputes related to the employment relationship. *Id.* By way of analogy, if the limiting clause read, "that the power of the arbitrator will be limited to interpreting Sarbanes-Oxley," it plainly would preclude arbitration of the claims brought herein. The provision at issue has the same effect as it relates to the claims brought herein, and the Court should decline to give weight to Defendants' tortured interpretation of the Arbitration Clause.

Indeed, Defendants' interpretation defies common sense – there is no reason that the parties would have to include a provision to specify that the arbitrator cannot amend or modify the Employment Agreement and/or offer letter because the parties never agreed to confer on the arbitrator the power to amend or modify either agreement. Arbitrators already have an inherent obligation to interpret and apply contracts as they are written. *See Comprehensive Orthopaedics & Musculoskeletal Care, LLC v. Axtmayer*, 293 Conn. 748, 765 (2009) (in determining whether an arbitrator has exceeded his or her power, the court is "charged with determining if the arbitrator[ ] ha[s] ignored their obligation to interpret and to apply the contract as written"). Moreover, the Employment Agreement contains a provision regarding "Amendment or Alteration" that provides that the Employment Agreement cannot be amended except in a writing signed by Plaintiff and the General Counsel of Point72. *See* Christensen Decl., Ex. A at § 11. Put simply, there would be no reason for the parties to insert a clause that does nothing more than clarify that the arbitrator does not have a power that no one could possibly believe he or she would have.

Accordingly, the Court should reject Defendants' purported interpretation of the relevant limiting clause and deny Defendants' motion to compel. *See Tallmadge Bros., Inc. v. Iroquois*

*Gas Transmission Sys., L.P.*, 252 Conn 479, 499 (2000) ("Such a tortured interpretation of the language . . . cannot be reconciled with our long-standing rule that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract."); *see also 24 Leggett St. Ltd. P'ship v. Beacon Indus., Inc.*, 239 Conn. 284, 295 (1996) ("A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity.").

## II. THIS COURT CAN AND SHOULD DECIDE THE ISSUE OF ARBITRABILITY IN THE FIRST INSTANCE

Under the FAA, "the general presumption is that the issue of arbitrability should be resolved by the courts." *Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920 (1995) (observing that "there is a general presumption that the issue of arbitrability . . . should be resolved by the courts"); *Bayme v. GroupAgent Sec., LLC*, No. 10 Civ. 6213 (GBD), 2011 WL 2946718, at *3 (S.D.N.Y. July 19, 2011) ("The question of arbitrability is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.") (internal quotation omitted). Therefore, courts do not "assume that the parties agreed to arbitrate arbitrability unless there is '***clear and unmistakable***' evidence that they did so." *First Options of Chicago, Inc.*, 514 U.S. at 944 (emphasis added) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415 (1986)). Where there are questions regarding who may decide issues of arbitrability, "the law . . . favor[s] judicial rather than arbitral resolution." *Shaw Grp., Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003).

In arguing that the Court should refer this action to arbitration to determine the issue of arbitrability in the first instance, Defendants claim that the Court "must . . . refer this case to

arbitration as the provision explicitly delegates arbitrability determinations to the arbitrator." *See* Defs.' Mem. at 9. However, where, as here, an arbitration clause clearly does not encompass the claims at issue in an action, the court should decline to submit the threshold issue of arbitrability to the arbitrator in the first instance. *See NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1032 (2d Cir. 2014) (holding that arbitrability was to be decided by the court in the first instance where the American Arbitration Association's rules ***only*** applied "to such arbitrations as may arise under the Agreement"); *Greene v. Subcontracting Concepts, L.L.C.*, No. 13 Civ. 1500 (AJN), 2014 WL 1087999, at *3 (S.D.N.Y. Mar. 19, 2014) (holding that "doubts as to *who* determines arbitrability—that is, the arbitrability of the question of arbitrability' are presumptively resolved in favor of resolution by courts") (internal quotation omitted); *see also United Parcel Serv. v. Lexington Ins. Grp.*, No. 12 Civ. 7961 (SAS), 2013 WL 1897777, at *2 (S.D.N.Y. May 7, 2013) (holding that the court had the authority to determine arbitrability in the first instance despite the incorporation by reference of the American Arbitration Association's rules). As the claims at issue in this action are plainly not subject to the Employment Agreement's Arbitration Clause, it cannot be said that the parties "unmistakeably" agreed to submit anything relating to this dispute to arbitration, and it would be an inefficient use of resources to refer the issue of arbitrability to an arbitrator. Therefore, the Court should deny Defendants' motion insofar as they argue that this Court should submit the question of arbitrability to the arbitrator in the first instance.

Based upon the foregoing, the Court should determine the threshold issue of arbitrability in the first instance and deny Defendants' motion to compel arbitration.[4]

---

[4] To the extent the Court grants any portion of Defendants' motion to compel arbitration and dismisses Plaintiff's Complaint as opposed to merely staying proceedings during the pendency of arbitration proceedings, any such dismissal should be without prejudice.

## **CONCLUSION**

For the reasons set forth herein, Defendants' motion to compel arbitration should be denied in its entirety.

Dated: March 21, 2018
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
    Jeanne M. Christensen
    Michael J. Willemin
    Kenneth D. Walsh

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
jchristensen@wigdorlaw.com
mwillemin@wigdorlaw.com
kwalsh@wigdorlaw.com

*Counsel for Plaintiff*